## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| FREDDIE DOUGLAS | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | |
| | § | CASE NO: _____ |
| CITY OF MANVEL, TANER TRUITT; | § | |
| THOMAS (KEITH) TRAYLOR; and | § | |
| AMANDA ZAWIERUSZYNSKI | § | |
| a/k/a AMANDA SHIPLEY | § | |
| *Defendants.* | § | |
| | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, FREDDIE DOUGLAS complaining about THE CITY OF MANVEL, OFFICER TANER TRUITT IN HIS INDIVIDUAL CAPACITY; MANVEL POLICE CHIEF THOMAS (KEITH) TRAYLOR IN HIS INDIVIDUAL CAPACITY AND AS POLICY MAKER FOR THE CITY OF MANVEL POLICE DEPARTMENT; AND AMANDA ZAWIERUSZYNSKI A/K/A AMANDA SHIPLEY and in support thereof would show unto the Court the following:

### PARTIES

**1.**    **FREDDIE DOUGLAS** is a resident citizen of El Campo, Texas, in Wharton County.

**2.**    **THE CITY OF MANVEL** is a municipality with a police force operating under the color of law in Brazoria County Texas. **Service can be had by serving the City Manager of the City of Manvel, Daniel S. Johnson, at the Manvel City Hall located at 20031 Highway 6, Manvel Texas 77578.** The Clerk of Court is respectfully requested to issue a citation for service on this Defendant, and return the citation to counsel for Freddie Douglas who will forward same to the appropriate party for service on this Defendant.

3.      **TANER TRUITT** is either currently or formerly a police officer working for The City of Manvel Police Department. The facts giving rise to the cause of action asserted by Freddie Douglas against Taner Truitt all occurred in Brazoria County. **Service can be had upon Taner Truitt at the City of Manvel Police Department, located at 6615 North Masters, Manvel, Texas 77578**. The Clerk of Court is respectfully requested to issue a citation for service on this Defendant, and return the citation to Counsel for Freddie Douglas who will forward same to the appropriate party for service on this Defendant.

4.      **CHIEF THOMAS (KEITH) TRAYLOR** (Hereinafter Chief Keith Traylor) is the police chief of the City of Manvel Police Department. The facts giving rise to the cause of action asserted by Freddie Douglas against Chief Keith Traylor all occurred in Brazoria County. **Service can be had upon Chief Keith Traylor at the City of Manvel Police Department, located at 6615 North Masters, Manvel, Texas 77578.** The Clerk of Court is respectfully requested to issue a citation for service on this Defendant and return the citation to Counsel for Freddie Douglas who will forward same to the appropriate party for service on this Defendant.

5.      **AMANDA ZAWIERUSZYNSKI A/K/A AMANDA SHIPLEY** (Hereinafter AZ) is an individual who at all pertinent times lived in the City of Manvel, Brazoria County, Texas. The actions taken by AZ made the basis of Freddie Douglas' claims against her and all took place in Brazoria County, Texas. **Service can be had upon AZ by serving her at her residence 8 Palmero Way, Manvel, Texas 77578-4876.** The Clerk of Court is respectfully requested to issue a citation for service on this Defendant and return the citation to Counsel for Freddie Douglas who will forward same to the appropriate party for service on this Defendant.

## JURISDITION AND VENUE

6.      The amount in controversy is in excess of this Court's minimum jurisdictional limits and this Court had jurisdiction under the "federal question" power of the United States District Courts of the Southern District, Galveston Division and pendent jurisdiction of the asserted state law claims

against Defendant AZ. The events giving rise to all causes of action asserted by Freddie Douglas all took place in Brazoria County, Texas.

## FACTUAL BACKGROUND

**7.**     This is another disturbing case of an abuse of state power by a police department. Ironically, that abuse was directed towards one of their own. Freddie Douglas was a distinguished police detective with the El Campo Police Department.  He had served honorably for El Campo PD since 2011, earning "Officer of the Year" in 2020. Freddie Douglas grew up in El Campo. He was a star athlete at El Campo High School. Freddie Douglas enjoyed a good reputation in El Campo as an honest and fair police officer. That all changed on December 7, 2023. The Manvel Police Department arrested Freddie Douglas without probable cause. They charged him with aggravated sexual assault. In fact, had the officers involved, which included the Chief of the Manvel Police Department, done the slightest bit of investigation, they would have discovered that the allegations by the Complainant were objectively and demonstrably false.

**8.**     Freddie Douglas was at the El Campo Police Department headquarters on December 7, 2023, helping to construct a float for the Christmas parade. The Chief of Police for El Campo PD, David Marcaurele, approached him in the parking lot and asked him where his service weapon was located. Freddie Douglas replied that it was in his police cruiser where he always kept it when he was at the El Campo Police Department Station. Chief Marcaurele said, "Freddie, I have bad news, you are being charged with aggravated sexual assault. I need you to come inside." Freddie Douglas complied. Chief Marcaurele led him into his office. Within minutes, the Chief of Police for the Manvel Texas Police Department, Keith Traylor and Officer Taner Truitt entered the office and placed Freddie Douglas under arrest. Of course, Freddie Douglas asked what this was all about. Officer Taner Truitt of the Manvel Police Department informed Freddie Douglas that he has been accused of aggravated rape by Amanda Zawieruszynski who was also known as Amanda Shipley (Hereinafter AZ). Freddie Douglas had only met AZ one time. He immediately knew that he had

done nothing wrong and that there was indisputable evidence that would objectively prove his innocence.

9.      Freddie Douglas met AZ for the first time at the home of John Marks on or about November 8, 2023. It was the day before Freddie Douglas' birthday. He and John Marks had planned to go to a Rockets game that night. Freddie Douglas arrived at John Mark's home in the early afternoon. Freddie Douglas met AZ for the first time that afternoon at John Marks' home. AZ lived across the street from John Marks. She was married. However, she had told John Marks that she was divorced. AZ and John Marks had a long-standing dating and intimate relationship. AZ had been to John Marks' home many times and spent the night many times. It was not surprising that she came over that day. She even brought cupcakes in honor of Freddie Douglas' birthday. AZ was interested in meeting with Freddie Douglas and John Marks later that evening after the Rockets game. In fact, she texted John Marks several times during the Rockets game to confirm that Freddie Douglas and John Marks planned on returning to Marks' home a take a late-night swim in his pool. Freddie Douglas and John Marks returned to Mr. Marks' home around 10:00 p.m. AZ arrived a short time later ready to swim in the pool and have drinks to celebrate Freddie's birthday. No one became intoxicated. At some point, John Marks and AZ started having consensual sex in the pool. After that, AZ wanted to have sex with Freddie Douglas and did. This sexual activity was completely consensual on the part of all involved. Freddie Douglas knew this version of events was true and knew that he could objectively prove it because John Marks' home is equipped with a sophisticated security camera system that captured the events in question.

10.     Within minutes of his arrest, Freddie Douglas told Manvel Police Chief Keith Traylor and Officer Truitt that there was surveillance video proof that the sexual encounter with AZ at John Marks home the evening of November 8, 2023, and the early morning hours of November 9, 2023, was completely consensual. Freddie Douglas freely told Chief Traylor and Officer Truitt what happened that night. He made it clear that any sexual contact between AZ and himself or John

Marks was completely consensual. At about the same time, the Manvel Police Department was arresting John Marks. John Marks was telling the Manvel Police Department the same thing. John Marks told them that not only was there a surveillance system but that he had preserved the video from that night. Marks also told the Manvel Police Department the video showed that AZ's participation in the events of that night was completely consensual.

**11.**     The arrest of Freddie Douglas came as a complete surprise to him. Manvel Police Department had not interviewed him about AZ's claims. Manvel Police Department had not interviewed John Marks about AZ's claim. The Manvel Police Department had not even attempted to contact either Freddie Douglas or John Marks for their side of the story regarding AZ's claims. However, within minutes of their arrest, both Douglas and Marks made it clear to the Manvel Police Department that there was proof that AZ's claims were fabricated. In addition to arresting Freddie Douglas and John Marks that day, the Manvel Police Department executed a search warrant at John Marks' home. Initially, they were not aware that they were being recorded on Mr. Marks' security system. One of the Manvel Police Department Officers executing the search warrant is heard to say, "The Ranger says that Marks claims he has video of everything and wants to know if we can obtain that…" A female officer upon hearing that states, "what if it was consensual? What then?" A discussion of whether AZ's false report was a crime then ensues. The point is, within minutes of Freddie Douglas' arrest, the Manvel Police Department knew that there was objective evidence that would determine who was being truthful, AZ or Douglas and Marks. This included both Chief Traylor and Officer Truitt.  That did not deter Chief Traylor, Officer Truitt or the Manvel Police Department. Freddie Douglas was booked on charges of felony aggravated sexual assault and bond was set at $100,000.00. Freddie's mother helped him post bond, costing $10,000.00 in non-refundable fees. Freddie Douglas was out of jail the next day. While in jail, Freddie only asked for one thing, a blanket because his cell was extremely cold. He was ignored by the Brazoria County jail personnel.

12.     Within hours of Freddie Douglas and John Marks' arrests, the Manvel Police Department had full access to the video captured by Mark's security system. Any reasonable person who looked at this evidence would conclude that AZ's version of events was fabricated. It was objectively and undisputably established by the video surveillance tapes that AZ was a willing participant in the sexual encounters and was never held against her will in any way. Despite access to this evidence, Chief Traylor, Officer Truitt and the Manvel Police Department persisted. The charges were not dropped. The Manvel Police Department acting by and through Chief Traylor and Officer Truitt aggressively pursued these charges in the face of overwhelming evidence that the charges against Freddie Douglas and John Marks were false.

13.     The consequences of Chief Traylor, Officer Truitt and the Manvel Police Department's stubborn refusal to admit they had violated Freddie Douglas' constitutional rights had devastating consequences. El Campo Police Department summarily terminated Freddie Douglas' employment with the Police Force and reported his arrest to the appropriate State of Texas agencies. Freddie Douglas not only lost his job as a police officer, but he was also stripped of his license as a Texas Peace Officer. The media coverage was unrelenting. Brazoria County and Wharton County are lightly populated and rural. Every small-town paper in the area printed headlines that El Campo Police Detective Freddie Douglas had been arrested and charged with felony aggravated sexual assault and that he had been fired from the El Campo Police Department. Freddie Douglas had to sell his house in a fire sale to fund his defense. As Freddie Douglas moved around the small town of El Campo, the stares and whispers followed him everywhere; the grocery store; Walmart; getting gas; at stop lights. In a town like El Campo, if a police officer is arrested and fired summarily by the department, everyone assumes that the accused is guilty. Only Freddie Douglas' closest friends and family supported him during this time. The result nearly crushed Freddie Douglas' spirit. His future looked very dark. It appeared he might never recover from this unjust accusation enabled by Chief Traylor, Officer Truitt and the Manvel Police Department's blind acceptance and prosecution.

14.     The facts regarding how this happened are even more disturbing. AZ was interviewed by
Manvel Police Department Officer Taner Truitt.  This interview did not occur until November 30,
2023, almost three weeks after the alleged events. AZ is a white female. John Marks and Freddie
Douglas are Black Americans. Officer Truitt showed great deference to AZ's version of events.
This, in spite of the fact that AZ admitted to having a long-standing affair with John Marks. AZ
also admitted having gone to Marks' house with "cupcakes" earlier in the afternoon on the day of
the alleged events. AZ admitted to Officer Truitt that she voluntarily returned to Marks' home to
go swimming, arriving in a bathing suit under a t-shirt. AZ admitted to Officer Truitt that she had
"texted" John Marks while he and Freddie Douglas were at the Rockets game making sure she was
still invited to Marks' home for a late-night swim. AZ even admitted to Officer Truitt that it was
not unusual for her to go to Marks' home late at night and swim in his pool. She claimed that this
time however, when Marks wanted to swim naked in the pool and have sex, she said no. She claimed
that she tried to fight Marks off. She claimed that he then pushed her over to Freddie Douglas who
had sex with her while she was trying to fight him off. Most interestingly, she claimed she was
afraid of both Marks and Douglas but had no evidence that either Douglas or Marks had threatened
her. She insisted that the Manvel Police Department arrest both Marks and Douglas immediately
because of this unfounded fear. Officer Truitt tells her during this interview that he must first get in
contact with Douglas and Marks to "get their side of the story" because, "the DA would never sign
off on an arrest warrant without doing that first." No one at Manvel Police Department ever tried
to get Douglas' or Marks' side of the story before they arrested them. No one at Manvel Police
Department ever consulted with the Brazoria County District Attorney's office regarding whether
probable cause existed based solely on AZ's account of events. Officer Truitt filled out an
incomplete, false and misleading "Complaint" seeking an arrest warrant for both Douglas and
Marks. Officer Truitt presented the false and misleading sworn "Complaint" to a Justice of the

Peace in Brazoria County named Richard B. Davis. In this "Complaint," sworn to by Officer Truitt, JP Davis was *not* told the following material facts:

- That no one from Manvel Police Department or anyone else had approached or interviewed either Freddie Douglas or John Marks prior to the Complaint.

- That Manvel Police Department had not conferred with the Brazoria County District Attorney's office regarding obtaining an arrest warrant for Douglas and Marks.

- That Freddie Douglas was a decorated veteran of the El Campo Police Department in good standing with the department and the State of Texas.

- That AZ had a longstanding "intimate dating relationship" with John Marks prior to the alleged events on November 8, 2023, and had visited his home for overnight stays on many occasions.

- That AZ went to John Mark's home voluntarily earlier in the day on November 8, 2023.

- That AZ is Caucasian and Douglas and Marks are both Black Americans.

- That AZ did not report this claimed rape for almost 3 weeks after the alleged date of the offence.

- That AZ was insistent upon an immediate arrest of both Douglas and Marks before their side of the story could be collected.

- That there was a sophisticated security video system in the Marks' home that likely would reveal whether any crime had occurred as alleged by AZ.

**15.**   Further, the Complaint sworn out by Officer Truitt was inaccurate, false and/or misleading in the following respects:

- That the sexual conduct between Douglas and AZ was against the will of AZ and without her consent.

- That the sexual conduct between Marks and AZ was against the will of AZ and without her consent.

- That AZ was held against her will at any time in Marks' home.

- That AZ alleged that the sexual assault included threats of subjecting her to a violation of Texas Penal Code §20A.02 Trafficking of Persons.

- That AZ alleged that at any time she was threatened with death, serious bodily harm or kidnapping while at Marks' home by Freddie Douglas or Marks.

- That the facts alleged by AZ constituted aggravating factors that made the alleged sexual assault a violation of Texas Penal Code §22.021 Aggravated Sexual Assault.

- That AZ "yelled" and "fought" against Douglas and Marks while they were having sex.

- That Marks removed AZ's bathing suit forcefully and she didn't want to swim naked in the pool with Douglas and Marks.

The sworn Complaint signed by Officer Truitt and endorsed by Chief Traylor sought an arrest warrant for Aggravated Sexual Assault. (*see:* Texas Penal Code §22.021). For a sexual assault to be aggravated under the Texas Penal Code, there must be aggravating circumstances that changes the crime from a Sexual Assault (*see:* Texas Penal Code 22.011) to an Aggravated Sexual Assault. The aggravating circumstances relied upon by Officer Truitt, as stated in his sworn Complaint were, "Freddie Charles Douglas, Jr. acted in concert with another who engaged in the aforementioned conduct directed toward the same victim and occurring during the course of the same criminal episode; and by acts or words placed the victim in fear that any person will become the victim of an offense under Section 20A.02(a)(3), (4),(7), or (8) or that death, serious bodily injury, or kidnapping will be imminently inflicted on any person against the peace of the State" Penal Code §22A.02 is the Human Trafficking Offense statute in Texas. Nothing AZ said during her interview with Truitt or anyone else at the Manvel Police Department nor any of the facts recited in Truitt's sworn Complaint seeking an arrest warrant supports a finding of probable cause for a violation of the Penal Code 22A.02 Trafficking of Persons. Nothing that AZ stated in her interview with Truitt or anyone else at the Manvel Police Department nor any of the facts recited in Officer Truitt's sworn Complaint seeking an arrest warrant would support probable cause that Freddie Douglas caused AZ to believe "that death, serious bodily injury or kidnaping" would be "imminently inflicted" upon AZ at any time she was with Freddie Douglas at Marks' home. The aggravated nature of the charges brought by Chief Traylor and Officer Truitt that formed the basis for the issuance of the arrest warrant by Justice of the Peace, Davis, was a total and complete fabrication. As such, Chief Traylor and Officer Truitt violated Texas Penal Code §39.03, Official Oppression that makes it illegal for

a public servant acting under the color of his employment to intentionally subject another to arrest, detention, search or seizure that he knows is unlawful or denies or impedes another's exercise or enjoyment of any right, privilege, power or immunity knowing his conduct is illegal.

16.      The fact that these allegations in the sworn Complaint submitted to Justice of the Peace, Davis, were materially incomplete, false, inaccurate and/or misleading is indisputable. The video evidence from Marks' surveillance footage establishes AZ's consent and ability to come and go as she pleases, all during the time she was at Marks' home on the dates in question. The surveillance video shows consensual sex between Marks and AZ. Marks took a video with his cell phone showing AZ willingly having intercourse with Freddie Douglas without any resistance at all. Surveillance video shows AZ jumping into the pool without her bathing suit enjoying her time at Marks' home. Surveillance video shows AZ happily swimming in the pool as she yells to Marks, "you will have to buy me flowers first…"  Surveillance video shows AZ leaving the pool area on her own with Marks and Douglas still outside by the pool. Douglas and Marks remain outside in the pool area while AZ is inside the home alone for an extended period during which she could have left at any time.

17.      At no time did Chief Traylor, Officer Truitt or anyone at the Manvel Police Department inform Justice of the Peace, Davis, that they had omitted relevant and important information from Officer Truitt's sworn Complaint seeking an arrest warrant for Freddie Douglas. At no time did Chief Traylor, Officer Truitt or anyone at the Manvel Police Department inform Justice of the Peace, Davis, that the Complaint also contained factual claims that were false, misleading and/or inaccurate. At no time did Chief Traylor, Officer Truitt or anyone at the Manvel Police Department ever inform Justice of the Peace, Davis, that they had seen video evidence that objectively proved that the claims of AZ were false and that no rape or kidnapping occurred. The persecution of Douglas and Marks continued, even after Chief Traylor, Officer Truitt, and Manvel Police Department knew that AZ had been completely untruthful about being raped and kidnapped.  Their

unrelenting illegal pursuit of Freddie Douglas only came to a halt when the case finally made its way to the Brazoria County District Attorney's office, on its way to a Brazoria County Grand Jury no-bill.

18.    When Douglas' Attorneys confronted the Brazoria County District Attorney's Office with the evidence in this case, they disavowed any knowledge about anything related to the case. Once educated about the evidence, the assistant district attorneys assigned to the case admitted that, had the Complaint sworn to by Officer Truitt and ratified by Chief Traylor been presented to them, they would have opposed the issuance of an arrest warrant. They were not consulted. Justice of the Peace, Davis, was misled, and information was concealed from him that would have made a difference. Had Justice of the Peace, Davis, been told the truth, no arrest warrant would ever have been issued. The circumvention of the Brazoria County District Attorneys' Office by Chief Traylor, Officer Truitt and the Manvel Police Department demonstrates their desire to arrest Douglas and Marks regardless of whether probable cause existed.

19.    The District Attorney of Brazoria County was in a tough spot. The Manvel Police Department was doubling down on its persecution of Douglas and Marks. They could not convince the Manvel Police Department to stop pursuing the charges. They had little choice but to submit the case to a grand jury. However, in this case, it was harder to get an indictment from the grand jury than the proverbial "ham sandwich." The Brazoria County Grand Jury no-billed both Freddie Douglas and John Marks. The Manvel Police Department never brought any charges against AZ for making a false police report.

20.    AZ lied to the Manvel Police Department regarding her interactions with Freddie Douglas. AZ filed false allegations that she was raped by Freddie Douglas. AZ made false allegations that she was kidnapped by Freddie Douglas. AZ caused false criminal charges to be filed against Freddie Douglas. AZ's conduct was malicious and led to baseless criminal charges against Freddie Douglas, resulting in his arrest and detention. Freddie Douglas was forced to incur massive expenses to post

bond and hire attorneys to defend himself against the malicious prosecution instigated by AZ's false allegations.  The allegations made against Freddie Douglas were false and defamatory and those false statements were a proximate cause of irreparable damage to Freddie Douglas' reputation both individually and professionally as a police officer. The false nature of AZ's allegations of rape against Freddie Douglas were demonstrably false.  Had the Manvel Police Department simply questioned Freddie Douglas and/or John Marks prior to issuing an arrest warrant, they would have realized that AZ's claims were patently false and never arrested him. The arrest of Freddie Douglas became front page news in Wharton County, Texas and beyond. It was foreseeable that AZ's false allegations of rape against a respected officer of the law and the malicious prosecution that ensued would lead to massive media coverage that would permanently sully the reputation of Freddie Douglas.

**COUNT I**
**VIOLATION OF FREDDIE DOUGLAS' CIVIL RIGHTS: 42 USCS §1983**
**CITY OF MANVEL**

**21.**  Freddie Douglas incorporates by reference all the factual allegations as stated above, and in addition would show unto the Court, the Manvel Police Department's arrest and charging of Freddie Douglas, violated Freddie Douglas' constitutionally protected right to not be arrested without probable cause protected by the Fourth Amendment of the United States Constitution. The Manvel Police Department ratified the conduct of its officers in arresting and charging Freddie Douglas by and through the participation in the arrest and charging of Freddie Douglas by the Chief of Police of the Manvel Police Department, Chief Keith Traylor. Chief Traylor is the top policy maker for the Manvel Police Department and has the power to set and enforce Manvel Police Department policy and procedure.  As a result of this ratification, the City of Manvel and the Manvel Police Department are also liable for any violation of the civil rights of Freddie Douglas under 42 USCS §1983.  The participation in the arrest of Freddie Douglas by Manvel Police Chief Keith Traylor, ratified the illegal arrest as consistent with the Manvel Police Department policy, allowing the arrest

without probable cause as well as the pursuit of those charges, after evidence of innocence was discovered by the Manvel Police Department. The unlawfulness of the arrest and charging of Freddie Douglas was clearly established, both before the arrest and charging, and at the time of the arrest and charging, and was sufficiently clear, so that every reasonable official would understand that said arrest and charging was unlawful. The investigation into the allegations of criminal conduct on the part of Freddie Douglas was plainly incompetent, and within minutes of his arrest, knowingly illegal on the part of Chief Traylor, Officer Truitt, and the Manvel Police Department. In spite of this knowledge, Chief Keith Traylor endorsed the illegal arrest thereby giving it the stamp of approved policy on the part of the City of Manvel and the Manvel Police Department. The Manvel Police Department obtained an arrest warrant from Justice of the Peace, Richard B. Davis, by and through deception. The Manvel Police Department omitted from the sworn Complaint, alleging criminal conduct on the part of Freddie Douglas' important relevant material information, that if disclosed would have resulted in Justice of the Peace, Davis' refusal to issue an arrest warrant. The Manvel Police Department provided materially false and misleading information in the Complaint seeking an arrest warrant for Freddie Douglas from Justice of the Peace, Davis. Chief Traylor of the Manvel Police Department either knew or was recklessly indifferent to the accuracy and truthfulness of the sworn Complaint submitted by Officer Truitt and thereby ratified the deceptive behavior as the policy of the City of Manvel and the Manvel Police Department. Had the sworn Complaint seeking an arrest warrant for Freddie Douglas not included these material false and misleading statements, but in fact included the facts known to the Manvel Police Department at the time of sworn Complaint seeking an arrest warrant, or within hours of the actual arrest of Freddie Douglas, Justice of the Peace, Davis, would either have not issued the arrest warrant or rescinded same when informed of the true facts. The Manvel Police Department, as sanctioned by the Manvel Police Chief Keith Traylor, made these material false and misleading statements, as well as omitting materially relevant facts in the arrest Complaint, intentionally and/or

with a reckless disregard for the truth. It is obvious that no reasonably competent officer or police department would have instituted and/or continued prosecution of charges against Freddie Douglas based on the evidence collected in their investigation. Pursuant to 42 USCS §1983 Freddie Douglas seeks reasonable and necessary attorney's fees in the past as well as those in the future for both the defense of the baseless charges filed against him and for the prosecution of this claim for violation of his civil rights.

**COUNT II**
**VIOLATION OF FREDDIE DOUGLAS' CIVIL RIGHTS:**
**OFFICER TANER TRUITT.**

22.      Freddie Douglas incorporates by reference all the factual allegations as stated above and in addition would show unto the Court that Officer Taner Truitt, in his individual capacity, under color of law as a certified police officer for the City of Manvel, did intentionally and or with a reckless disregard for the truth, cause to be issued an arrest warrant for Freddie Douglas for the charges of aggravated sexual assault. Officer Truitt, with the endorsement of his Chief of Police at the Manvel Police Department, in fact arrested Freddie Douglas and placed him in jail wrongfully. Officer Truitt, with the endorsement of Chief of Police of the Manvel Police Department, Traylor, did make false and misleading statements to a justice of the peace and omitted material information to obtain an arrest warrant for Freddie Douglas. Had Officer Truitt been truthful and not omitted material information in his sworn Complaint seeking an arrest warrant, the justice of the peace would not have issued an arrest warrant. Further, after the arrest of Freddie Douglas, Officer Truitt did intentionally, and or with reckless disregard for the truth and civil rights of Freddie Douglas, continue to pursue the prosecution of Freddie Douglas when he obtained evidence of the actual innocence of Freddie Douglas. The actions of Officer Truitt in his individual capacity were a proximate cause of the violation of Freddie Douglas' civil rights and the damage he sustained as a proximate result.

## COUNTY III
## VIOLATION OF FREDDIE DOUGLAS' CIVIL RIGHTS:
## CHIEF KEITH TRAYLOR.

**23.**     Freddie Douglas incorporates all the factual allegations as stated above and in addition would show unto the Court the Chief of the Manvel Police Department, Keith Traylor, actually participated in and witnessed the arrest of Freddie Douglas. Chief Traylor was acting under the color of the state as Police Chief of the Manvel Police Department at the time of the arrest of Freddie Douglas in and in the course of his participation in the arrest of Freddie Douglas. Chief Traylor is the top policy maker for the Manvel Police Department and has the power to set and enforce Manvel Police Department policy and procedure.  Chief Traylor knew or was recklessly ignorant that the sworn Complaint upon which the arrest warrant was issued did not evidence probable cause for the arrest. Chief Traylor knew or was recklessly ignorant of the fact that Officer Truitt made false and/or misleading statements in his sworn Complaint seeking an arrest warrant for Freddie Douglas. Chief Traylor knew or was recklessly ignorant of the fact that Officer Truitt omitted materially relevant facts in his sworn Complaint seeking an arrest warrant for Freddie Douglas.  Chief Traylor, as Chief of Police of the Manvel Police Department, enabled, endorsed and ratified Office Truitt's quest to arrest Freddie Douglas without probable cause giving the method and manner of Freddie Douglas' arrest the status of being consistent with the policy of the Manvel Police Department. But for Chief Taylor's endorsement, ratification and participation in the arrest of Freddie Douglas, the wrongful illegal arrest of Freddie Douglas would not have occurred. Further, Chief Traylor in his individual capacity as a certified police officer, did intentionally or with conscious indifference to the truth, cause the arrest, charging, and relentless prosecution for the crime of aggravated sexual assault in the face of indisputable evidence of actual innocence on the part of Freddie Douglas. The actions of Chief Traylor in his individual capacity were a proximate cause of the violation of Freddie Douglas' civil rights and the damages proximately caused by said violation.

## COUNT IV
## LIBEL, SLANDER, AND DEFAMATION OF CHARACTER: AZ

24.     AZ made false statements regarding Freddie Douglas, alleging that he raped her and kidnapped her. AZ knew these statements were false. It was reasonably foreseeable that Freddie Douglas would be arrested as a result of the false statements by AZ. It was reasonably foreseeable that the arrest of Freddie Douglas would generate media coverage that would publish AZ's false, slanderous and defamatory statements. AZ's false, slanderous and defamatory statements attacked the reputation of Freddie Douglas both professionally and personally. As a proximate result, Freddie Douglas has sustained damage to his professional reputation and personal reputation. He has suffered personal and mental anguish and economic loss both in the past and future.

## COUNT V
## MALICIOUS PROSECUTION: AZ

25.     AZ falsely reported to the Manvel Police Department that she had been raped and kidnapped by Freddie Douglas. The Manvel Police Department, relying solely on the allegations of AZ, sought and obtained an arrest warrant against Freddie Douglas for aggravated sexual assault. Freddie Douglas was arrested by the Manvel Police Department on December 7, 2023, for aggravated sexual assault. Freddie Douglas was forced to post a $100,000.00 bond prior to trial. The charges against Freddie Douglas were presented to a duly empaneled Grand Jury in Brazoria County. The Brazoria County Grand Jury no-billed the charges against Freddie Douglas. Freddie Douglas was objectively and demonstrably innocent of any criminal activity regarding AZ. There was no probable cause to arrest or charge Freddie Douglas with aggravated sexual assault of AZ. AZ intentionally and knowingly lied and acted with malice when she falsely reported to the Manvel Police Department that she had been raped and kidnapped by Freddie Douglas. But for AZ intentionally and knowingly providing material false information to the Manvel Police Department, the arrest and prosecution of Freddie Douglas would not have occurred. As a proximate result of

AZ's procuring of the arrest and prosecution of Freddie Douglas, Freddie Douglas has sustained damages both in the past and future.

## COUNT VI
## DAMAGES - CIVIL RIGHTS: 42 USCS §1983
## CITY OF MANVEL

**26.** As a result of the violation of 42 USCS §1983 by the City or Manvel and by and through the Manvel Police Department, Freddie Douglas seeks all elements of damage authorized by law including but not limited to:

A. Reasonable and necessary attorney's fees incurred to defend against the false criminal charges prosecuted by the City of Manvel by and through the Mavel Police Department.

B. Reasonable and necessary attorney's fees in the past incurred for the prosecution of this violation of civil rights claim against the City of Manvel by and through the Manvel Police Department.

C. Lost earnings and earning capacity in the past proximately caused by the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

D. Lost earnings and earning capacity that will in reasonable probability occur in the future as a proximate result of the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

E. Mental Anguish in the past proximately caused by the violation of Freddie Douglas' civil rights by the City of Mavel by and through the Manvel Police Department.

F. Mental Anguish that in reasonable probability will occur in the future as a proximate result of the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

G. Injury to reputation in the past proximately caused by violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

H. Injury to reputation that will in reasonable probability occur in the future proximately caused by the violation of the civil rights of Freddie Douglas by the City of Manvel by and through the Manvel Police Department.

I. Medical expenses in the past incurred by Freddie Douglas proximately caused by violation of his civil rights by the City of Manvel by and through the Manvel Police Department.

J. Medical expenses in the future that will in reasonable probability be incurred by Freddie Douglas, that are proximately caused by the violation of his civil rights by the City of Manvel by and through the Manvel Police Department.

**COUNT VII**
**DAMAGES-CIVIL RIGHTS: 42 USCS §1983**
**OFFICER TANER TRUITT IN HIS INDIVIDUAL CAPACITY**

27.     As a result of the violation of 42 USCS §1983 by Officer Taner Truitt in his individual

capacity, Freddie Douglas seeks all elements of damage authorized by law including but not limited

to:

A.  Reasonable and necessary attorney's fees incurred to defend against the false criminal charges prosecuted by the City of Manvel by and through the Mavel Police Department.

B.  Reasonable and necessary attorney's fees in the past incurred for the prosecution of this violation of civil rights claim against the City of Manvel by and through the Manvel Police Department.

C.  Lost earnings and earning capacity in the past proximately caused by the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

D.  Lost earnings and earning capacity that will in reasonable probability occur in the future as a proximate result of the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

E.  Mental Anguish in the past proximately caused by the violation of Freddie Douglas' civil rights by the City of Mavel by and through the Manvel Police Department.

F.  Mental Anguish that in reasonable probability will occur in the future as a proximate result of the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

G.  Injury to reputation in the past proximately caused by violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

H.  Injury to reputation that will in reasonable probability occur in the future proximately caused by the violation of the civil rights of Freddie Douglas by the City of Manvel by and through the Manvel Police Department.

I.  Medical expenses in the past incurred by Freddie Douglas proximately caused by violation of his civil rights by the City of Manvel by and through the Manvel Police Department.

J.  Medical expenses in the future that will in reasonable probability be incurred by Freddie Douglas, that are proximately caused by the violation of his civil rights by the City of Manvel by and through the Manvel Police Department.

K.  Exemplary damages in accordance with the Texas Civil Practice and Remedies Code §41.001 et seq.

## COUNT VIII
## DAMAGES-VIOLATION OF CIVIL RIGHTS: 42 USCS §1983
## CHIEF KEITH TRAYLOR

**28.**    As a result of the violation of 42 USCS §1983 by Manvel Chief of Police Keith Traylor, in

his individual capacity, Freddie Douglas seeks all elements of damage authorized by law including

but not limited to:

A.  Reasonable and necessary attorney's fees incurred to defend against the false criminal charges prosecuted by the City of Manvel by and through the Mavel Police Department.

B.  Reasonable and necessary attorney's fees in the past incurred for the prosecution of this violation of civil rights claim against the City of Manvel by and through the Manvel Police Department.

C.  Lost earnings and earning capacity in the past proximately caused by the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

D.  Lost earnings and earning capacity that will in reasonable probability occur in the future as a proximate result of the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

E.  Mental Anguish in the past proximately caused by the violation of Freddie Douglas' civil rights by the City of Mavel by and through the Manvel Police Department.

F.  Mental Anguish that in reasonable probability will occur in the future as a proximate result of the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

G.  Injury to reputation in the past proximately caused by violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

H.  Injury to reputation that will in reasonable probability occur in the future proximately caused by the violation of the civil rights of Freddie Douglas by the City of Manvel by and through the Manvel Police Department.

I.  Medical expenses in the past incurred by Freddie Douglas proximately caused by violation of his civil rights by the City of Manvel by and through the Manvel Police Department.

J.  Medical expenses in the future that will in reasonable probability be incurred by Freddie Douglas, that are proximately caused by the violation of his civil rights by the City of Manvel by and through the Manvel Police Department.

K.  Exemplary damages in accordance with the Texas Civil Practice and Remedies Code §41.001 et seq.

## COUNT IX
## DAMAGES–LIBEL, SLANDER, DEFAMATION, AND MALICIOUS PROSECUTION: AZ

29.     As a result of AZ's libel, slander, defamation of character, and malicious prosecution, Freddie Douglas seeks all elements of damage authorized by law including but not limited to:

    A.  Damage to Freddie Douglas' professional reputation in the past and in the future.

    B.  Damage to Freddie Douglas' personal reputation in the past and in the future.

    C.  Mental Anguish in the past was proximately caused by the wrongful conduct of AZ.

    D.  Mental Anguish that will in reasonable probability occur in the future that is proximately caused by the wrongful conduct of AZ.

    E.  Exemplary Damages in accordance with Texas Civil Practice and Remedies Code, §41.001 et seq.

## JURY DEMAND

30.     Freddie Douglas hereby demands that this case be presented to a jury at the time of trial and that the jury decide all presented issues of fact.  The Plaintiff paid the required jury fee at the time of filing of this Complaint for the privilege of having a jury decide this case.

## ALL CONDITIONS PRECEDENT

31.     All conditions precedent to the filing of this lawsuit have occurred or have been performed.

## PRAYER

        WHEREFORE, PREMISES CONSIDERED, Freddie Douglas prays that the Defendants be cited to appear before this Court and that upon full and final hearing that he be awarded full and just damages for injury caused by the wrongful conduct of the Defendants and for all other relief, in equity and at law, to which he may show himself justly entitled.


## [SIGNATURE TO FOLLOW ON NEXT PAGE]

Respectfully submitted,

**MIKE KERENSKY, PLLC**

By: _/s/ Michael W. Kerensky_ .
        Michael W. Kerensky
        Texas Bar No. 11331500
        440 Louisiana, Suite 2300
        Houston, Texas 77002
        713 228-5100 – Telephone
        713 228-6138 – Facsimile
        mike@kerenskylawfirm.com

**ATTORNEY FOR PLAINTIFF**
**FREDDIE DOUGLAS**